No. 2984.

JACOB DENNEY *v.* L. L. JOHNSON.

Where a contract has for its consideration an illegal currency reprobated by law, the plaintiff suing on that contract can not recover.

APPEAL from the Seventh District Court, parish of Orleans. *Collens,* J. *E. W. Huntington,* for plaintiff and appellee. *Race, Foster & Merrick,* for defendant and appellant.

TALIAFERRO, J. This is a suit upon an account for $850. The defendant repudiates the claim on the ground that the consideration upon which it was founded was the payment of Confederate money. The plaintiff had judgment as prayed for, and the defendant has appealed.

This, in one respect, belongs to a class of cases with which the courts have become familiar, that of plaintiff and defendant contradicting under oath the testimony of each other in the most direct terms, imposing upon courts and juries the task of determining on which side lies the preponderance of proof.

It appears that in the early part of the year 1862, the plaintiff having a large quantity of molasses for sale on his plantation in the parish of St. James, meeting in New Orleans the defendant and several other persons, proposed to them to sell molasses at twenty-five cents per gallon, to be paid for at the termination of the war then existing between the United States and the insurgent States, or so-called Confederate States. To the plaintiff was sold one hundred barrels, to Joshua M. Craig a hundred barrels, to Daniel H. Sessions one hundred barrels, to Cyrus Johnson, Walter Sessions and Richard H. Sessions, each fifty barrels. This sale was entered into at the St. Charles Hotel, the parties all being present when it was entered into. The defendant in his testimony says in positive terms that the molasses was to be paid for at the close of the war in Confederate money or Confederate bonds. The testimony of Walter Sessions, Daniel H. Sessions, Richard H. Sessions and Joshua M. Craig, four of the persons who purchased at the same time, taken under commission sent to Arkansas, fully corroborate the testimony of the defendant. These four witnesses all detail minutely the circumstances under which the sale took place—the time, place, persons present, etc. They all say the same thing in respect to the terms. They all declare the contract was that the molasses was to be paid for at twenty-five cents per gallon in Confederate money or Confederate bonds at the close of the war. The defendant and four witnesses swear distinctly that these were the terms of sale. Against this evidence there is only the positive statement of the plaintiff that payment was to be made "in the currency

of the country" after the war was over. But it is shown that, since the close of the war, the defendant paid the plaintiff $100, and it is inferred by the judge a quo that this was made under a new promise, there existing a natural obligation on the defendant to pay for the property, and this inference he thinks is strengthened by the circumstance that defendant's witnesses, who purchased at the same time, have made similar new promises. Whatever may be the subsequent course these witnesses have thought proper to adopt in regard to their own affairs, it by no means affects the defendant, who stands upon the inherent vice of the only engagement he made with the plaintiff, that of paying for the molasses at the close of the war in Confederate money or Confederate bonds, a stipulation which four of the witnesses substantially establish to have been made by the plaintiff and accepted by the purchasers. So far from entering into a new obligation to pay the plaintiff's claim, the defendant's own testimony is very positive that no such new agreement was made. He says: "I gave the plaintiff $100 since 1862, I think about two or three years ago in the city of New Orleans. I gave the above sum to plaintiff to get rid of the annoyance he caused me by trying to induce me to pay for the molasses in United States currency. I considered the sum stated a present to plaintiff, as I did not consider I owed him anything. I gave him the above sum with the request that he would never mention the molasses to me again, as I owed him nothing. I do not remember what I said at the time I gave him this sum. I remember he took the money, and did not take any offense at what I said and did." The plaintiff's own testimony is the only evidence that contradicts these statements. There is nothing in the record supporting the plaintiff's evidence to give it the preponderance over the defendant's evidence. It is for the plaintiff to make out his case beyond doubt.

It may be adverted to, in considering issues of the kind here presented, that the contemporaneous history of the late rebellion establishes that during the early period of the war, embracing the time when the contract was entered into in this case between the plaintiff and defendant, there was throughout the insurgent States an almost universal conviction and belief that a revolution would be accomplished and a new government established in those States. The so-called Confederate money had then supplanted every other currency in the Southern States, and it had credit and value attached to it; and at that time instances were rare of persons who doubted the ultimate success of the intended new government or the reliability of its currency. These facts we deem not without weight in a case like the present, where a confliction of evidence occurs as to whether Confederate money formed the consideration of the contract.

We conclude that the contract in this case had for its consideration an illicit currency reprobated by law, and that the plaintiff can not recover. 20 An. 37; 19 An. 165.

It is therefore ordered and decreed that the judgment of the district court be annulled, avoided and reversed. It is further ordered that the plaintiff's demand be rejected and this suit dismissed at his costs.